UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHEELA SANGAN, : | |
|     Plaintiff, : | |
| : | |
| v. : | Case No. 3:06cv587 (PCD) |
| : | |
| YALE UNIVERSITY and V.M. : | |
| RAJENDRAN, : | |
|     Defendants. : | |

### RULING ON MOTION TO DISMISS

Plaintiff Sheela Sangan initiated this action seeking redress for alleged employment discrimination, harassment, and retaliatory discharge in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-58, et seq.; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; and Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794. Defendants Yale University and V.M. Rajendran move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for the dismissal of Counts III, IV, and VI of Plaintiff's Complaint, arguing that these claims are insufficient and do not state a claim upon which relief may be granted. For the reasons stated herein, Defendants' Motion to Dismiss [Doc. No. 16] is **denied** as to Count III, **granted** as to Count IV, and **denied** as to Count VI.

**I.   BACKGROUND**[1]

Plaintiff, a resident of Madison, Connecticut, is a female of Indian descent, and was born

---

[1] A court considering a motion to dismiss for failure to state a claim must accept the facts alleged in the complaint as true. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). According, the statement of facts that follows is derived entirely from Plaintiff's Complaint.

in India. (Compl. ¶ 1.) Plaintiff was employed by Defendant Yale University ("Yale") in a Yale-owned laboratory as a "Research Assistant II." (Id. ¶ 3.) Dr. Henry Binder, a white American male, was the supervisor of the lab in which Plaintiff worked, and Defendant Rajendran, a male of Indian descent, was Plaintiff's "direct supervisor." (Id. ¶¶ 4-5). From 2002 through the present, Plaintiff has been the only female employee in the laboratory in which she worked, and the only female lab technician working in that lab since 1997. (Id. ¶ 7.)

On November 6, 2003, Plaintiff complained to Yale, in writing, that Rajendran was treating her differently from the other lab personnel, who were not Indian females. She informed Yale that Rajendran had falsely claimed that Plaintiff performed no work for him, refused to sign Plaintiff's time sheets, yelled at Plaintiff, belittled her, forbid her from writing notes and participating in lab discussion, and generally mistreated and disrespected her. (Id. ¶¶ 8-9.) In her letter, Plaintiff also informed Yale that Rajendran threatened her, claiming that she would lose her job if she sought the union's assistance to stop the harassing and discriminatory conduct, and boasted that the union could do nothing to him, as he is a scientist. (Id. ¶ 10.) Plaintiff's letter to Yale complained that "Rajendran repeatedly told her that women should not be fat, and that they have to lose weight after giving birth and keep their bodies in shape, referring to the plaintiff." (Id. ¶ 11.) Plaintiff also reported that she heard Rajendran "telling other lab staff that Christianity is bogus and that Hinduism is the better religion," knowing that Plaintiff is a Christian. (Id. ¶ 12.) Plaintiff complained that Rajendran "stated on several occasions that men are superior to women and that they should simply listen to whatever was said to them by men." (Id. ¶ 13.) She reported that Rajendran "hates women" and that she was aware that Rajendran had trouble with several other women who had worked in the lab, at least one of whom had resigned because of his

conduct. (Id. ¶ 14.)   Plaintiff also informed Yale that "Rajendran's efforts to humiliate and harass her were increasing and that she was suffering stress, chest pain and nightmares as a result." (Id. ¶ 15.)

During this period of time, Plaintiff also informed Dr. Binder of Rajendran's words and actions, however, Dr. Binder did nothing to assist Plaintiff or to deter Rajendran. (Id. at ¶ 16.)  At some point after her complaint was filed, Yale began requiring Plaintiff to keep a detailed log of her work.  No other employee was required to keep such a log and Plaintiff had not been required to do this until after she filed her written complaint. (Id. ¶ 17.)

On February 11, 2004, Plaintiff again informed Yale, in writing, that she was being harassed by Rajendran.  Plaintiff also wrote directly to Rajendran, and asked him to stop lying about her and yelling at her.  The plaintiff again requested that Yale intercede on her behalf, suggesting that Dr. Binder "talk to Rajendran to get him to stop his conduct."  Plaintiff also reported the situation to JoAnn Sullivan, who was also employed by Yale. (Id. ¶ 18.)

Plaintiff reports that Rajendran's hostility towards her increased after her complaints.  She alleges, for example, that Rajendran would yell at her and prevent her from going home sick.  At this time, Plaintiff reported Rajendran's conduct to her union and to a Yale Human Resources Representative. (Id. ¶ 19.)

During this period of time, Plaintiff began applying for positions in other departments at Yale. (Id. ¶ 20.)  On March 10, 2004, Plaintiff notified Dr. Binder that she had made efforts to seek employment in other departments of Yale University, in an effort to separate herself from Dr. Binder's lab and Rajendran. (Id. ¶ 21.)  On April 5, 2004, Plaintiff met with Dr. Binder at his request.  In this meeting, Dr. Binder told Plaintiff that he believed that all of her accusations,

3

including those concerning Rajendran, were false.  Dr. Binder warned her to "forget about applying for other positions, and ordered her to continue working in his lab," despite her problems with Rajendran. (Id. ¶ 22.)  On April 6, 2004, Dr. Binder accused Plaintiff of not doing sufficient work. (Id. ¶ 23.)  According to Plaintiff, the situation deteriorated further, with Dr. Binder claiming that Plaintiff was accusing him and Rajendran of being "jerks," and reducing Plaintiff to tears. (Id. ¶ 24.)

In a subsequent conversation between Plaintiff and Dr. Binder, Plaintiff informed Dr. Binder that she had never been trained on a certain computer program, however, he stated only that was "ashamed" of her. (Id. ¶ 25.)  Both Dr. Binder and Rajendran accused the plaintiff, on numerous occasions, of not doing enough work and not working efficiently enough.  On one occasion, Dr. Binder compared Plaintiff's work to that of post-doctorate workers, a comparison that she claims was unfair, as post-doctorate workers are known "to be more highly skilled and educated" than Plaintiff. (Id. ¶ 26.)  Dr. Binder also ordered Plaintiff to create a work plan for herself and refused to assist her in doing so, even though no other employee was required to do this. (Id.)

On April 12, 2004, Plaintiff informed Yale that she had medical problems and requested accommodations therefor.  Yale told Plaintiff that if she was physically present on the job, she must work as she had before, and it would change nothing. (Id. ¶ 27.)  Plaintiff was required to and did provide documentation from her physicians. (Id. ¶ 31.)  Yale also required her to see a Yale physician, who confirmed, on May 11, 2004, that Plaintiff had medical problems which required accommodation. (Id. ¶ 33.)  Rather than accommodating her medical problems, Yale required Plaintiff to take sick leave, even Plaintiff did not have any paid leave left. (Id. ¶¶ 32,

34.)

Dr. Binder again called Plaintiff into his office on April 15, 2006, and during their meeting, apparently "became infuriated" with her and accused her of ignoring him because Plaintiff was looking down while he was speaking to her. Plaintiff explained that this is the custom in India when one is addressed by one's teachers or elders, but that apparently failed to diffuse the situation. (Id. ¶ 28.) Dr. Binder confronted Plaintiff again the next day, on April 16, 2004, and accused her of not working hard enough and of lying with regard to her explanation for not looking him in the face. (Id. ¶ 29.) Dr. Binder denied Plaintiff's request to put his expectations for her work in writing. (Id.) On the same day, Rajendran again refused to sign Plaintiff's time sheet despite her requests that he do so, thereby preventing Plaintiff from receiving pay. (Id.¶ 29.) Plaintiff again complained to her union and a representative of the union met with Dr. Binder. (Id. ¶ 30.)

Yale informed Plaintiff that her position was to be terminated on August 29, 2004. (Id. at ¶ 35.) Plaintiff's employment was thereafter terminated, and Yale did not hire Plaintiff for any other positions. (Id. ¶¶ 36-37.)

Plaintiff filed this suit on April 17, 2006, after exhausting her administrative remedies and receiving a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities. (Id. ¶ 41.) In her Complaint, Plaintiff alleges that she suffered harassment and discrimination by Defendants on the basis of her gender, race, color, ethnicity, national origin, ancestry, religion, disabilities, and age. (Id. ¶¶ 38, 40.) Plaintiff also claims that Defendants impermissibly retaliated against her due to the fact that she complained about their treatment of her. (Id.)

5

## II.   DISCUSSION

### A.   Motion to Dismiss Standard of Review

The function of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 776 (2d Cir. 1984) (citation omitted).  Therefore, when considering such a motion, the court must accept the facts alleged in the complaint as true. Scheuer, 416 U.S. at 236.  Dismissal of a complaint under Rule 12(b)(6) is inappropriate unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." I. Meyer Pincus & Associates v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir.1991); see also Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (Courts should not grant a Rule 12(b)(6) motion to dismiss merely because recovery seems unlikely or remote, as "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").

### B.   Counts IV and VI: Intentional Infliction of Emotional Distress

Plaintiff brings intentional infliction of emotional distress ("IIED") charges against Yale in Count IV and against Rajendran in Count VI, alleging that Defendants' conduct was extreme, outrageous, intentional, and malicious, that Defendants knew that their actions "were likely to cause severe emotional distress, and did cause severe emotional distress," and that Defendants' actions "caused the plaintiff to suffer, *inter alia*, severe adverse effects upon her mental and physical health, ascertainable economic loss, severe emotional distress, the loss of her employment and all of the economic benefits appurtenant thereto, the derogation of her

professional and personal reputations and ability to secure employment in her professional field."
(Compl. ¶¶ 42-45.)

In Connecticut, to state a claim of intentional infliction of emotional distress, Plaintiff must allege (1) that Defendants intended to inflict emotional distress or knew or should have known that such distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous; (3) that Defendants' conduct was the cause of Plaintiff's distress; and (4) that the emotional distress sustained by the Plaintiff was severe. Appleton v. Bd. of Educ., 254 Conn. 205, 210, 757 A.2d 1059 (2000) (quoting Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986)). Although Defendants do not contest the first, third, and fourth elements of the tort, they contend that Plaintiff's allegations fail to meet the second element of this tort, arguing that Plaintiff does not allege conduct on the part of the Defendants that is sufficiently extreme and outrageous to state a claim for IIED. (See Defs' Mem. Supp. Mot. Dismiss 8.) Accordingly, only the second element—i.e., whether the conduct at issue was "extreme and outrageous"—will be discussed here.

Plaintiffs in Connecticut are held to a stringent standard when attempting to demonstrate that a defendant's conduct was "extreme and outrageous." Huff v. West Haven Bd. of Educ., 10 F. Supp. 2d 117, 122 (D. Conn. 1998). An IIED claim requires conduct that exceeds "all bounds usually tolerated by decent society." Petyan, 200 Conn. at 254 n.5 (quoting W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 12, p. 60). As discussed in the Restatement, which the Connecticut Supreme Court has accepted as the controlling standard, see Appleton, 254 Conn. at 210-211,

The cases thus far decided have found liability only where the defendant's conduct

> has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 cmt. d (1965).  A defendant's conduct that is "merely insulting or displays bad manners or results in hurt feelings" is insufficient to form the basis of an IIED action. Appleton, 254 Conn. at 211 (quoting Mellaly v. Eastman Kodak Co., 42 Conn. Supp. 17, 19, 597 A.2d 846 (Super. Ct. 1991)).

The question of whether a defendant's conduct is sufficient to satisfy the extreme and outrageous requirement is a threshold issue for the court to determine.  Appleton, 254 Conn. at 210.  Only where reasonable minds can differ on the issue does it become a question for the jury. Restatement (Second) of Torts § 46 cmt. k (1965).

Both Plaintiff and Defendants cite a litany of cases in support of their relative positions on whether Defendants' conduct was sufficiently extreme and outrageous to state a claim for IIED.  Plaintiff argues that "many courts have held facts no more offensive than those alleged here to be sufficiently 'extreme and outrageous' to meet that element of the wrong." (See Pl.'s Mem. Opp. Mot. Dismiss 8.)  Meanwhile, Defendants argue that courts have repeatedly determined that circumstances far exceeding those at issue in this case have been held not to be sufficiently extreme and outrageous to support a claim for IIED. (See Defs.' Mem. Supp. Mot. Dismiss 24.)

The Connecticut Supreme Court has explained that the employment relationship necessarily involves a certain degree of emotional distress. It has stated that, in the workplace, individuals "should expect to experience some level of emotional distress, even significant emotional distress." Perodeau v. City of Hartford, 259 Conn. 729, 752, 792 A.2d 752 (2002). The Perodeau court noted that, in addition to the reasonably expected stresses of performance evaluations, employee discipline, compensation and decisions related thereto, individuals "should reasonably expect to be subject to other vicissitudes of employment, such as workplace gossip, rivalry, personality conflicts and the like." Id.; see also DeLaney v. Inst. of Living, No. CV020097157S, 2002 Conn. Super. LEXIS 2069, at *15, 2002 WL 1559043, at *5 (Conn. Super. Ct. June 18, 2002) ("Criticism of employee job performance . . . is an expected, albeit unwelcome and uncomfortable part of every employee's working life.") (citation omitted). Nevertheless, this does not mean that persons in the workplace should expect to be subject to conduct that "transgress[es] the bounds of socially tolerable behavior" and that involves "an unreasonable risk of causing emotional distress . . . that . . . if it were caused, might result in illness or bodily harm." Perodeau, 259 Conn. 729 at 752 (citations omitted).

Although conduct alleged to be sexual harassment and/or discrimination on the basis of a plaintiff's protected status often gives rise to a claim for IIED, the coexistence of the two claims does not establish that sexual harassment and/or discrimination is *per se* extreme and outrageous. Compare Kilduff v. Cosential, Inc., 289 F. Supp. 2d 12, 22 (D. Conn. 2003) (finding an issue of fact as to whether suggestive comments and physical contact alleged to constitute sexual harassment also constituted IIED); Nance v. M.D. Health Plan, Inc., 47 F. Supp. 2d 276, 278 (D. Conn. 1999) (holding that there was an issue of fact as to whether a supervisor's questioning

about, references to, or harassment on the basis of an employee's sexual orientation or personal relationships constituted IIED); Caesar v. Hartford Hospital, 46 F. Supp. 2d 174, 180 (D. Conn. 1999) (finding that allegations of discrimination on the basis of race, national origin and age and false reports to the state Department of Public Health made for the malicious purpose to retaliate against plaintiff and jeopardize her profession were sufficient to state a claim for IIED); and Benton v. Simpson, 78 Conn. App. 746, 749, 829 A.2d 68 (App. Ct. 2003) (finding, in face of allegations that defendant manager lost temper six to nine times, used profanity, banged on the filing cabinet, belittled employees, and made derogatory comments about women, that defendant's conduct was extreme and outrageous); Dingle v. Fleet Bank, No. CV00-0443028-S, 2001 Conn. Super. LEXIS 677, at *3-4, 2001 WL 282922, at *1 (Conn. Super. Ct. Feb. 28, 2001) (collecting cases, and noting that although the cases go both ways, generally, the "use of racial epithets has been held to be outrageous behavior supporting recovery for intentional infliction of emotional distress"); with Williams v. Perry, 960 F. Supp. 534, 541 (D. Conn. 1996) (employer's derogatory comments about the plaintiff's interracial marriage and other discriminatory behavior did not rise to the level of extreme and outrageous conduct). In addition, workplace harassment has also been held to be sufficiently extreme and outrageous where apparently unrelated to a protected status. See Oppenheim v. Gruell, No. CV030472301S, 2005 Conn. Super. LEXIS 128, at *, 2005 WL 407594, at *11-12 (Conn. Super. Ct. Jan. 11, 2005) (finding that allegations of physically intimidating behavior and vulgar treatment by co-worker were sufficient to state a claim for IIED).

        1.    *Count VI: Defendant Rajendran*

The plaintiff alleges that Defendant Rajendran (1) made repeated false accusations about

her job performance, (2) treated Plaintiff differently from lab personnel who were not members of Plaintiff's protected group(s), (3) repeatedly refused to sign her time sheets, (4) yelled at her, (5) belittled her, (6) forbid her from writing notes and participating in lab discussions, (7) generally mistreated and disrespected her, (8) threatened that she would lose her job if she sought the assistance of the union and boasted that the union could do nothing to him because he was a scientist, (9) repeatedly told Plaintiff—allegedly in reference to her—that women should not be fat and that they had to lose weight after giving birth and keep their bodies in shape, (10) told other lab staff—within earshot of the Plaintiff and knowing that Plaintiff is a Christian—that Christianity was bogus and that Hinduism was the better religion, (11) engaged in sexist behavior, including telling Plaintiff that men are superior to women and that women should simply listen to whatever was said to them by men, (12) lied about Plaintiff, (13) increased his hostility after Plaintiff complained to Dr. Binder and JoAnn Sullivan by yelling at Plaintiff and preventing her from going home sick, and (14) engaged in other efforts to humiliate and harass the Plaintiff. (See Compl. ¶¶ 8-15, 19, 29.)

Viewing the allegations in the light most favorable to the Plaintiff, this Court concludes that reasonable minds could differ as to whether Rajendran's alleged conduct rises to the level of extreme and outrageous. Although not all of Plaintiff's allegations may reach the level of extreme and outrageous conduct on their own, the allegations, viewed together, are sufficient to survive a motion to dismiss. Reasonable minds could conclude that Rajendran's repeated derogatory comments regarding Plaintiff's weight, religion, and gender go beyond the pale of communication and criticism expected in an employment context and should not have to be tolerated. Rajendran's refusal to sign Plaintiff's time sheets and repeated withholding of her pay

may be deemed extreme and outrageous, as can his false accusations about Plaintiff's performance, threats about her losing her job, preventing her from going home sick, and other harassing behavior. See Grossman v. Computer Curriculum Corp., 131 F. Supp. 2d 299, 310 (D. Conn. 2000) (denying the defendant's motion for summary judgment with respect to the plaintiff's IIED claim where the plaintiff alleged that defendant made false accusations of inferior job performance and bad-mouthed employee to customers); Talit v. Peterson, 44 Conn. Supp. 490, 498, 692 A.2d 1322 (Super. Ct. 1995) (denying the defendants' motion to strike the plaintiff's IIED claim where she alleged that defendants subjected her to criticism and caused her to lose her employment in retaliation for filing a grievance); Decampos v. Kennedy Center Inc., No. CV89 0260290 S, 1990 Conn. Super. LEXIS 1696, at *10-11, 1990 WL 264687, *3 (Conn. Super. Ct. Nov. 21, 1990) (finding that the plaintiff's allegations that the defendant intentionally and maliciously made false statements about the plaintiff's job performance were sufficient to state a cause of action for IIED).  Furthermore, behavior which otherwise fails to constitute extreme and outrageous conduct may yet rise to that intolerable level, and thus be actionable as IIED, when it "'arise[s] from an abuse by the actor of a position, or a relation with another, which gives him actual or apparent authority over the other or power to affect his interests.'" Scandura v. Friendly Ice Cream Corporation, No. CV930529109S, 1996 Conn. Super. LEXIS 1642, at *10-11, 1996 WL 409337, at *4 (Conn. Super. Ct. June 26, 1996) (quoting Restatement (Second) of Torts § 46 cmt. e (1965)).

     Plaintiff has sufficiently plead facts in support of a cause of action for IIED under Connecticut law, and whether Defendant Rajendran's conduct was in fact extreme and outrageous is a question of fact and not appropriate for resolution on a motion to dismiss.

Accordingly, Defendants' motion to dismiss Count VI of the Complaint is denied.

        2.       *Count IV: Defendant Yale University*

Plaintiff does not claim that Defendant Yale University is vicariously liable for IIED based on the conduct of Defendant Rajendran, but rather asserts that Yale is liable for this tort based on its own conduct during Plaintiff's employment and termination. Assuming, as do Defendants, that the conduct of Dr. Binder constitutes "actions of the defendant Yale" as described in Count IV of Plaintiff's Complaint, the conduct attributed to Yale includes: (1) failing to assist Plaintiff or deter Rajendran after Plaintiff informed Dr. Binder about Rajendran's conduct, (2) requiring Plaintiff to keep a detailed log of her work and create a work plan after she complained about Rajendran's conduct although no other workers were required to do so, (3) refusing to assist Plaintiff in creating work plan, (4) allowing Rajendran to increase his hostility toward Plaintiff, (5) telling Plaintiff he was believed that her accusations against Rajendran were false, (6) telling Plaintiff to forget about applying for other positions and ordering her to continue working in the lab with Rajendran, (7) accusing Plaintiff of not doing sufficient work, (8) accusing Plaintiff of thinking that Rajendran and Dr. Binder were "jerks," (9) reducing Plaintiff to tears, (10) telling Plaintiff he was "ashamed" of her for not knowing how to use a computer program for which she had not been trained, (11) criticizing Plaintiff's abilities, (12) comparing Plaintiff's work abilities to those of more qualified employees, (13) becoming infuriated with Plaintiff and accusing Plaintiff of ignoring him because she looked down while he was speaking to her, even though she explained it was part of her culture to do so, (14) refusing to put in writing what was expected of Plaintiff, (15) refusing to sign Plaintiff's time sheet, thereby preventing Plaintiff from receiving the pay she had earned, (16) telling Plaintiff that if she was

physically present on the job she must work as she had before her medical problems arose, (17) requiring Plaintiff to provide documentation of her medical problems from her physicians, (18) requiring Plaintiff to see a Yale physician, (19) refusing to accommodate Plaintiff's medical condition and forcing her to take sick leave when she had none left, (20) terminating Plaintiff's employment, and (21) not hiring Plaintiff for another position despite the availability of other positions for which Plaintiff was qualified. (See Compl. ¶¶ 6, 8-19, 22- 29, 31, 32, 34-37).

Certain principles have emerged in the context of employer/employee relationships which guide the analysis of IIED claims against an employer. Courts should evaluate whether "the employer's conduct, not the motive behind the conduct, [is] extreme or outrageous." Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000). Therefore, claims of employer misconduct in the form of intentional discrimination or retaliation, including discharge, which challenge motive or intent, are dismissed unless the manifesting conduct is itself outrageous or extreme. See Campbell v. Plymouth, 74 Conn. App. 67, 79, 811 A.2d 243 (App. Ct. 2002) (quoting Parsons, 243 Conn. at 89) ("'the mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior.'"); see also Huff v. West Haven Bd. of Educ., 10 F. Supp. 2d 117, 123 (D. Conn. 1998) (holding that plaintiff failed to state a cause of action for IIED where plaintiff alleged that defendants refused to hire her based on racial discrimination but alleged no other conduct on behalf of defendants); Ziobro v. Connecticut Institute for the Blind, 818 F. Supp. 497, 502 (D. Conn. 1993) (holding that terminated teacher's assistant failed to establish extreme and outrageous conduct even if school and supervisor failed to conduct an adequate investigation before dismissing teacher and supervisor knew that dismissal was unjustified). As in the cases discussed above, Plaintiff's

claims that she was terminated and not rehired by Yale, regardless of the motivation, do not state a claim for IIED. See Armstead v. Stop & Shop Cos., Inc., No. 3:01cv1489 (JBA), 2003 U.S. Dist. LEXIS 4107, at *15-16, 2003 WL 1343245, at *5 (D. Conn. Mar. 17, 2003) ("Defendant's motivation for terminating plaintiff is not relevant, and the termination in and of itself cannot constitute extreme and outrageous behavior."). Although such actions may be unlawful, they do not constitute extreme and outrageous conduct for the purposes of a claim for IIED.

One of Plaintiff's principal claims against Yale is its failure to assist her or deter Rajendran after Plaintiff's numerous complaints describing harassing and discriminatory conduct by Rajendran. This Court has held that a failure "to respond" or "to prevent," or "choos[ing] to ignore," such conduct does not rise to the level of extreme or outrageous behavior, nor does it constitute a basis for vicarious liability for the acts of another. See Kilduff v. Cosential, Inc., 289 F. Supp. 2d 12, 22 (D. Conn. 2003) (dismissing IIED claim against the employer where the plaintiff alleged that her employer failed to act in the face of her compliant which detailed sexually harassing conduct by her supervisor) (citing Abate v. Circuit-Wise, Inc., 130 F. Supp. 2d 341, 348 (D. Conn. 2001) ("Defendant's alleged negligent failure to prevent sexual harassment does not rise to the level of intentional, extreme and outrageous conduct that would support a claim for intentional infliction of emotional distress."); Sowemimo v. D.A.O.R. Sec., Inc., 43 F. Supp. 2d 477, 492 (S.D.N.Y. 1999) (holding that "even if [the employer] failed to adequately respond to [the plaintiff's] reports of harassment and discharged her based on a retaliatory motive, such action is not sufficient to meet the high threshold of extreme and outrageous conduct set by New York courts"); Ayers v. Wal-Mart Stores, Inc., 941 F. Supp. 1163, 1168 (M.D. Fla. 1996) (finding that the plaintiff's allegations that her employer negligently trained and

supervised its managerial employees, and retained the alleged harasser despite his conduct and the plaintiff's complaints, were insufficient to survive summary judgment)).

Plaintiff's allegations that she was burdened with additional employment responsibilities such as the requirements that she keep a "detailed log of her work" and create a "work plan," fail to state a claim for IIED, even if such standards did not apply to other employees. See Massey, 289 F. Supp. 2d at 166 (granting the defendants' motion to dismiss the plaintiff's IIED claim and holding that even if the defendant's actions "were based on discriminatory animus," the plaintiff's complaint "alleges no overtly discriminatory actions and it is impossible to conclude solely on the basis of that motive, with no other overtly outrageous actions, that the conduct is extreme and outrageous"). Dr. Binder's criticism of Plaintiff's computer abilities and comparison of Plaintiff's abilities with those more qualified employees also fail to meet the extreme and outrageous requirement. See Farricielli v. Bayer Corp., 116 F. Supp. 2d at 286 ("No rational fact finder could conclude that the alleged conduct—yelling at, reprimanding and transferring plaintiff for work-related issues—was 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"); Dollard, 63 Conn. App. at 552 (granting the defendants' motion to strike the plaintiff's IIED claim where the plaintiff alleged that the defendants "hypercritically examined every small detail of [her] professional and personal conduct," placed her on intensive supervision, and publically admonished her). Yale's refusal to accommodate Plaintiff's disability in the workplace also does not constitute extreme and outrageous conduct so as to state a claim for IIED. This Court has held that failure to accommodate a disability does not "rise to the level exceeding all bounds usually tolerated by decent society," even where accommodations

16

have been made for other employees. See Armstead, 2003 U.S. Dist. LEXIS 4107, at *15-16, 2003 WL 1343245, at *5 ("Failure to accommodate plaintiff's disability and refusal to communicate openly with plaintiff regarding his employment status do not rise to the level of exceeding all bounds usually tolerated by decent society."); see also Reed v. Signode Identification Corp., 652 F. Supp. 129, 136-37 (D. Conn. 1986) (employer's denial of request for leave of absence when former employee was undergoing treatment for cancer and refusal to rehire the former employee when his former position was available were not so outrageous as to support a claim for IIED); but see Pudim v. Colella, No. 3:04cv1579 (PCD), 2004 U.S. Dist. LEXIS 24096, 2004 WL 2750315 (D. Conn. Nov. 22, 2004) (holding that the defendants' requirement that the plaintiff was required to submit work in handwritten format although defendants knew that she suffered from a physical disability which prevented her from doing so, where no other employees were subject to such requirements, was more than a "mere failure to accommodate," and was sufficient to state a claim for IIED).

Even when viewed as a whole, the interactions between Plaintiff and Dr. Binder do not fall outside the type of communications that one should expect in an employment context. See, e.g., Perodeau, 259 Conn. at 752; Dollard v. Board of Educ. of the Town of Orange, 63 Conn. App. 550, 552, 777 A.2d 714 (App. Ct. 2001) (holding that it was proper to strike plaintiff's IIED claim where she alleged that the defendants "hypercritically examined every small detail of plaintiff's professional and personal conduct," placed her on intensive supervision, and publically admonished her); DeLaney, 2002 Conn. Super. LEXIS 2069, at *22, 2002 WL 1559043, at *8 (holding that the plaintiff failed to state a claim for IIED where his allegations of his supervisor's conduct included hostile glances, abusive language, public shouting, ignoring plaintiff, unjust

criticism of every aspect of plaintiff's work performance, and denying plaintiff's requests to be excused from work for a religious holiday); Campbell v. Plymouth, 74 Conn. App. 67, 78-79, 811 A.2d 243 (App. Ct. 2002) (granting the defendant's motion to strike the plaintiff's IIED claims where the plaintiff alleged that his employer, through its agents, made repeated demands and inquiries into his personal beliefs and attitudes and harassed him to change him mind regarding the signing of alleged false grant documents).

Based on the foregoing case law, Defendants' motion to dismiss Count IV of Plaintiff's Complaint is granted. The conduct alleged with regard to Defendant Yale is not sufficiently extreme and outrageous, such that it exceeds "all bounds usually tolerated by decent society," Petyan, 200 Conn. at 254 n.5, to state a claim for IIED.

### C. Count III: Negligent Supervision

In Count III of her Complaint, Plaintiff alleges that "[t]he defendant Yale, *inter alia*, failed, refused or neglected to supervise, train, instruct, monitor, adequately screen, hire or otherwise direct its agents, officers or employees regarding the plaintiff; to protect plaintiff from the negligent, reckless, intentional or tortious acts of its agents, officers or employees; and by and through other acts and omissions failed, refused or neglected to fulfills its duties to the plaintiff." (Compl. ¶ 42.) In their Motion to Dismiss, Defendants characterize Count III as a claim against Yale for negligent infliction of emotional distress and present arguments as to why this claim should fail. (See Defs.' Mem. Supp. Mot. Dismiss 1.) In her Objection to Defendants' Motion to Dismiss, Plaintiff contends that Count III is, contrary to Defendants' contention, a cause of action for negligent supervision. (See Pl.'s Mem. Opp. Mot. Dismiss 12, 15.) In their Reply to Plaintiff's Opposition of the Motion to Dismiss, Defendants contend that Plaintiff's claim for

18

negligent supervision also must fail. (See Defs.' Reply 4-6.)

In order to state a claim of negligent supervision under Connecticut law, "'a plaintiff must plead . . . that [s]he suffered an injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise. A defendant does not owe a duty of care to protect a plaintiff from another employee's tortious acts unless the defendant knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct.'" Burford v. McDonald's Corp., 321 F. Supp. 2d 358, 366 (D. Conn. 2004) (quoting Abate, 130 F. Supp. 2d at 344).

In this case, Plaintiff's complaint to Dr. Binder about Rajendran's conduct constituted sufficient notice of Rajendran's propensity to engage in tortious conduct. See Burford, 321 F. Supp. 2d at 367; see also Abate, 130 F. Supp. 2d at 345 (plaintiff's allegations that the employer "should have known" of the harasser's propensity to engage in such conduct based on his "attitude" and "conduct" were sufficient to establish notice).  Moreover, Plaintiff has sufficiently alleged that she suffered an injury based on Yale's failure to respond to her complaint and meet its duty to control Rajendran.  Specifically, Plaintiff alleges that Yale "failed, refused or neglected to supervise, train, instruct, [and/or] monitor . . . its . . . employees regarding the plaintiff," which Plaintiff alleges "caused [her] to suffer, *inter alia*, severe adverse effects upon her mental and physical health, ascertainable economic loss, severe emotional distress, the loss of her employment and all of the economic benefits appurtenant thereto, the derogation of her professional and personal reputations and ability to secure employment in her professional field." (Compl. ¶¶ 42-43.)  Plaintiff's allegations that Yale failed to act to control Rajendran, following Plaintiff's complaints to Dr. Binder and JoAnn Sullivan, and therefore caused her to suffer an

injury, are sufficient to state a claim for negligent supervision. Accordingly, Defendants' motion to dismiss Count III of Plaintiff's Complaint is denied.

### III.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 16] is **granted in part** and **denied in part**. Specifically, Defendants' motion is **denied** as to Count III, **granted** as to Count IV, and **denied** as to Count VI.

SO ORDERED.

Dated at New Haven, Connecticut, September  15 , 2006.


/s/
Peter C. Dorsey, U.S. District Judge
District of Connecticut