UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHEELA SANGAN                              :

    VS.                                    : No. 3:06CV00587(PCD)

YALE UNIVERSITY AND V.M. RAJENDRAN         :

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In six counts plaintiff brings this action arising out of her employment by Yale. Ruling on a motion to dismiss, her claim of emotional distress against Yale (Count Four) was dismissed, leaving claims of harassment and discrimination against Yale under Conn. Gen.Stat. § 46a-58(a), Connecticut Fair Employment Practices Act (CFEPA) (Count One); Title VII, Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (Count Two); Negligent Failure to Supervise (Count Three); 42 U.S.C. Title I, Americans With Disabilitites Act (ADA) and § 504, Rehabilitation Act of 1973) (Count Five); and infliction of emotional distress against defendant Rajendran (Count Six). The claims of discrimination and conduct underlying all of the claims focused on her gender, national origin, age, ancestry, religion and in Count Five her alleged disability.

The undisputed facts are drawn from the parties' Local Rule 56(a)(1) statements. Plaintiff is a 45 year old female of Indian ancestry. She was educated and worked in biochemistry. She commenced as a volunteer in 1996 at a Yale laboratory run by Dr. Henry Binder who is not a named defendant. She became employed and worked up to classification as research Assistant II with increasing responsibility and compensation. She is Christian. Her immediate supervisor in the lab was defendant Rajendran, a Hindu. She claims he disparaged and belittled her religion, expressing his view of the superiority of the Hindu religion both to her and to others in her

presence. She claims he viewed women as inferior and subordinate in Indian culture and communicated with her in that vein. Irrelevantly she notes instances of his treatment of other women. The only specifics alleged were an observation, lauding his wife, of how some women lost their weight gain after pregnancy, apparently an allusion to plaintiff's failure to do so, and his refusal to sign her time sheets which she claims precluded her being paid, disregarding her contrary admission that her "salary was never delayed or withheld..for any reason." Defendant's LR Statement, ¶ 28, admitted in plaintiff's LR statement. She claims he denied her a window seat in the lab and criticized her work unfairly. As to her race, ethnicity, national origin and ancestry, she claims the harassment and abuse was directed at her because in her culture she was not expected to complain and thus chose not to challenge the treatment nor file a grievance. No evidence supports this which she conceded was a matter of her belief. Pl. Dep p130-31. She voices claims of threats to her job (which she claims was related to her ancestry but concedes is only her belief, P.Dep. ¶ 130-31) but notes no adverse change in her job until her termination which was decided by Dr. Binder, no claim being made that Dr. Rajendran was involved. She noted reports of the abuse to Dr. Binder and Yale's Equal Employment Opportunity Office only to be referred to her union grievance rights. She dates her first complaint outside the lab as a letter to the Department Head, Dr. Nathanson, dated November 6, 2003 in which she complains of what she has reiterated several times over as the basis for her claims. In addition to citing Dr. Rajendran's improprieties directed at women generally or at other women and not specifically at her, (he allegedly also yelled at men, (Pl. rule 56 Statement, ¶ 53) she conclusorily notes her generally being subjected to harassment and humiliation and specifically only the refusal to sign her time sheets, his rejection of her need to advise him when she leaves the lab and her leaving

2

notes of work in process, his exclusion of her from a lab meeting, her exclusion from a window desk, his threat to her job if she complained to the union, conceded to have been in 2000 (pl. dep. p.131), his observation of her weight which he ceased when she complained, negative observations about Christianity, and observations that men were superior to women. In stating her complaints about the rudeness, insensitivity, abuse, discourtesy, humiliation, unfairness, harassment, there is no suggestion or mention of gender discrimination as the motivation. The nature of much of what she complains of is gender neutral. Indeed, in contradiction of her claimed gender motivation, she asserts that her treatment stemmed from her lower status in the lab as a technician. While she notes her upset, there is no suggestion of anything close to adverse employment action against her nor of a severe degree.

Plaintiff has been afflicted with a heel bone spur which was medically substantiated to require her to be relieved from standing for more than an hour without having a ten minute break. Per Dr. Roch, she was unable to do the experiment to which she was assigned because it required prolonged standing, to which plaintiff agreed, plaintiff's dep p.258, lines 1-5. She offers no explanation for her argument that she was able to do the job when her evidence/testimony is contrary. She also notes a problem to her knee but offered no testimony nor medical evidence that would sustain a claim of disability based upon a problem with her knee.

Dr. Binder's lab was funded by grants for which he applied, itemizing the expenses to be incurred in accomplishing the purpose for which funding was granted. The project to which the work assigned to plaintiff was funded, provided for plaintiff's position. The funds appear to have been paid to Yale which actually hired plaintiff as an employee and paid the compensation to which she was entitled. It is Yale's contention, offered as the non-discriminatory basis for

3

terminating plaintiff's employment, that the grant for that project expired on March 31, 2004, thus leaving Yale without funds to pay plaintiff. Plaintiff's response, and argument that that reason is pretextual, is that Yale had other grants the funds from which could have been used to fund plaintiff's position. She offers no evidence that her position could thus have been funded. It would appear that other grants would pertain to other projects than the one on which plaintiff was working and the funds therefrom could not be used for a project other than the one for which the grant was intended. Thus for lack of evidence to support her claim and based on the apparent channeling of grant funds to specific projects, of which plaintiff's work was not part, defendant's claim that with the expiration of the grant from which plaintiff's compensation was funded is not refuted and not shown to be pretextual.

 Plaintiff's employment entitled her to 90 days notice of her termination. Dr. Bindy became aware of the expiration of the grant by which plaintiff was funded too late to give her the 90 days notice. She was continued in her position in deference to Yale's obligation for the 90 days. Plaintiff argues that if Yale could keep her beyond the term of the grant, it did not need to terminate her as it did. Her argument in that respect does not allow for the factors noted above and which prompted Yale to keep her in her position to fulfill the 90 day obligation. Yale placed plaintiff, after her actual and final termination from her position, in an Interim Employment Pool (IEP) from which plaintiff would be eligible, for eighteen months, for continued, temporary, employment while she looked for another job at Yale. Plaintiff was in the IEP for one month until she accepted employment at another employer without loss of pay. In response to her inquiry, Dr. Binder told her she was free to look for other employment while in the position in his lab. She claims that she was unsuccessful in applying for a number of jobs which she

4

seemingly attributes to adverse recommendations from Drs. Binder and Rajendran. No corroboration for that claim is offered; no documentation of it is provided and as otherwise without foundation it is not credited. She conceded no knowledge of any such. Pl. Dep. p. 164.

Plaintiff cites as evidentiary corroboration notes of interviews, a source with no more credibility that her own conclusory assertions. She is unabashed in relying thereon much akin to her flouting L.R. 7(a)(2) by filing a memorandum of 64 pages without authorization to do so when the rule limits such to 40 pages. Where there is no demonstrated foundation and allegations are asserted as fact, factual claims which are merely her conclusions are ignored. See Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995).

DISCUSSION: Summary Judgment is properly granted only when the record reflects the absence of any genuine issue of material fact with respect to the claims asserted. F.R.Civ.P. 56. As defendants have asserted, and pointed out in the record, there appears no such issue, absent proof on plaintiff's part. The non-moving party must demonstrate, through evidence, existence of such an issue which she was entitled to present to a jury on the basis that there was evidence which, if credited by a jury, could reasonably sustain a verdict in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 256 (1986); Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001). Plaintiff may not rely on mere allegations or denials nor on a metphysical doubt as to the facts. Rule 56(e); Darden v. Town of Stratford, 420 F.Supp 2d 36, 41 (D.Conn. 2006). If, plaintiff, having the burden of proof thereof, fails "to make a sufficient showing on an essential element of [her] case with respect to which [she] has the burden of proof," summary judgment is appropriate. Celetex Corp. v. Catrell, 477 U.S. 317, 323 (1986). If the record, as a whole, would not "lead a rational trier of fact to find for the non-moving party, there is no

5

genuine issue for trial." Matsushita Elec.Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A material fact is one which "might affect the outcome of the suit under the governing law", and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. Though discrimination cases rely on proof of parties' intent, treating such differently from other ultimate questions of fact is not justified. Oliphant v. Connecticut Dept. of Transp., 2006 WL 3020890, at *5 (D.Conn., Oct. 23, 2006). In deciding summary judgment motions, the court does not judge credibility but must resolve ambiguities in the evidence and contested inferences in favor of non-movant. Cargill, Inc. v. Charles Kowsky Resources, Inc.,, 949 F.2d 51 (2d Cir. 1991). The motion should not be granted unless the evidence, construed favorably to non-movant, could not support a judgment in non-movant's favor. Addickes v. S.H.Kress & Co., 398 U.S. 144, 157 (1970); Gummo v. Village of Depew, 75 F. 3d 98, 107 (2d Cir. 1996). As to the issue(s) presented, if there is any evidence in the record from which an inference may reasonably be drawn in non-movant's favor, summary judgment will not lie. R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d. Cir 1997).

    A. The discrimination claim under Title VII and CFEPA is assessed under the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Worster v. Carlson Wagon Lit Travel, Inc., 353 F.Supp. 2d 257, 270 (D.Conn. 2005); Kanios v. UST, Inc. 2005 WL 3579161, at *6, n.2. (D.Conn., Dec. 30, 2005). Plaintiff, faced with a summary judgment motion, must make out a prima facie case by presenting evidence sufficient to create an inference that each act allegedly having an adverse employment effect was discriminatorily motivated. George v. U.S. Postal Service, 2006 WL 798924, at *6(D.Conn., Mar. 28, 2006). Evidence relied on to counter a motion for summary judgment must be of a nature as to be

admissible in court. Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). "Conclusory allegations will not suffice to create a genuine issue." Delaware & H. R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990). The movant "need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d at 111, quoting Celotex Corp. v. Catrett, 477 U.S. at 324; See Gallo v. Prudential Residential Sers. Ltd. P'hip, 22 F.3d 1219, 1223-24 (2d Cir. 1994). If plaintiff meets her burden, the burden shifts to defendant to produce a non-discriminatory reason for the action(s) in rebuttal of plaintiff's claim(s). If defendant does articulate such a reason, the inference of discrimination of the prima facie case drops out of the picture and the burden shifts back to plaintiff to show that the proffered reason is mere pretext and that plaintiff's protected status was the motivating factor for the action(s). Id. A prima facie case requires proof claimant is a member of a protected class, she was qualified for the job, she suffered an adverse employment action and the action occurred under circumstances giving rise to an inference of its being discriminatorily motivated. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000).

  B. DISCRIMINATION/RETALIATION CLAIMS. These claims are based on conduct manifesting animosity to plaintiff based on her gender, religion, national origin, ethnicity and heritage or ancestry. Her listed characteristics are not disputed and place her in a protected class. Her qualification for the job in which she was placed is not disputed. What is contested is her claim of having suffered an adverse employment action, which requires a materially adverse change in the terms and conditions of her employment. While she testifies to various aspects of the conduct and behavior of Dr. Rajendran (to whom, only, she attributes her claims as to her

7

religion or gender), which could be found to be offensive, discourteous, demeaning, and/or belittling, she cites nothing which would constitute an adverse employment action except her termination. Her conclusions do not constitute a basis for finding facts. Dr. Rajendran's expressions of disdain toward Christianity did not result in any material change in plaintiff's employment, nor did his alleged belief in the superiority of men over women. The only comment regarding the latter which plaintiff cites as having been directed to her was a reference to his wife's weight loss after pregnancy. In any case, as discussed below, the comments about religion and gender are time-barred, as they occurred between 1997 and 2002.

Plaintiff's ethnicity, national origin, heritage and ancestry were only referred to as an assumption that the cultural subservience, which Plaintiff claims restrained her from complaining about her treatment, were taken advantage of by Dr. Rajendran because he knew he could get away with his conduct because she would not complain of it. No comment or incident related in any way to her race, ethnicity, national origin or ancestry are cited, nor instance of formal reprimand nor discipline, thus relegating this claim of discrimination to the plaintiff's speculation.

That leaves her termination as the only action adversely impacting her employment. All of the other conduct of which she complains and describes, including adverse comments, criticism, threats to her employment, close scrutiny, yelling at her, and lying about her work, do not qualify. Proffering the refusal of a window placement has no merit as such, particularly since it was Dr. Binder who made the seat assignments, not Dr. Rajendran, who purportedly noted the reason to be her technician status. So also the refusal to sign her time sheets which, despite her argument, were admitted to have had no effect on her receipt of her compensation. L.R. 56

8

statement, ¶ 28, admitted by plaintiff; Pl. Dep. 9. 186.

The failure to offer any evidence which could qualify as an adverse employment action, except for her termination, foreclose a finding of discrimination in her employment. Her termination will be discussed further. Her status in the lab progressed from a volunteer through two steps as a research assistant with increased responsibility and compensation. She offers no direct evidence of discriminatory motivation for the termination. Before considering defendant's assertions as to the reason for the termination, the discontinuance of her position and the absence of any need for the work she was doing for any of the other projects in process in the lab, her evidence does not give rise to any belief that her termination came in circumstances which would substantiate an inference of discrimination. The forgoing precludes any finding of discriminatory motivation in her termination based on the asserted grounds of discrimination.

Her claim of retaliation is described (Pl's Memo., p. 35) as having followed upon her complaint to Dr. Nathanson and her union. However, the only date provided is the November 6, 2003 letter to Dr. Nathanson. Pl. Dep. p. 90. Retaliation requires that plaintiff have participated in a protected activity, known to defendant. Undisputedly, her complaint of mistreatment by Dr. Rajendran would qualify as a protected activity, and as communicated to Dr. Nathanson would then be known to Yale. It is also required that Yale have taken an adverse action against plaintiff based on the complaint. Plaintiff's citing the behavior toward her by Dr. Rajendran is unavailing for two reasons. One is that as discussed herein, that behavior was trivial in nature and its impact on her was not of a sufficient magnitude to justify holding Yale responsible. Further, Dr. Rajendran's behavior did not dissuade plaintiff from making known her complaints about her treatment, thereby seeking statutorily provided relief not only from Dr. Nathanson but from her

9

union (which filed a grievance on May 17, 2004), as well as from Dr. Binder and an administrator, Joanne Sullivan. The only adverse action was her termination, but that came some seven months after her letter to Dr. Nathanson. Given that proximity in time is a key factor in indirectly demonstrating retaliation, Plaintiff's termination was not sufficiently close in time to her engaging in the protected activity to give rise to an inference of causality. See <u>Slattery v. Swiss Reinsurance America Corp.</u>, 248 F.3d 87, 94 (2d Cir. 2001). Plaintiff has offered no evidence in direct proof of the requisite causation. See <u>Padilla v. Metro-North Commuter R.R.</u>, 92 F.3d 117, 122 (2d Cir. 1996). She cites a job threat which was idle at worst, as Dr. Rajendran was not a decision maker in the Yale hierarchy, and which occurred in 2000; a refusal to let her leave work when she had the flu (contrary to which she testified that she was allowed to leave, pl's dep p. 86-88); being yelled at and criticized about her work; and rejection of her claims about Rajendran, none of which rises above the threshold for legitimate claims of adverse action. She cites her commencing other job applications in March, 2004 (she cites the number as 22 without identification of the potential employers), none of which resulted in jobs, for which she blames Drs. Binder and Rajendran for allegedly providing bad references. That assertion is not demonstrated, even conclusorily, to have been made from personal knowledge, nor is it documented or corroborated by any evidence. Unfounded assertions cannot create disputed issues of fact. Even if those reasons were not sufficient to preclude the claim, there is the fact of Yale's explanation for the termination, which has not been shown by plaintiff to be pretextual, as discussed herein.

Even if, arguendo, a question of fact is assumed as to her termination being motivated by discrimination and/or retaliation, the claim fails because defendant has demonstrated a non-

discriminatory reason for ending plaintiff's employment. A cogent explanation of the grant process by which funds are made available for a project on a budgeted basis for their expenditure has been articulated. Thus the position as a research assistant was budgeted and authorized payment to plaintiff. When the grant expired, funds ended, leaving plaintiff with no source of compensation. Her claims of pretext are unavailing. Yale credibly explained why it was obliged to give her 90 days notice of termination, and having failed to do so due to Dr. Binder's absence on sabbatical, it continued her position even though the project on which she was working ended. Her claim that thereby Yale's reason, i.e. the end of her funding, is pretextual is speculative and without substantiation. So also her assertion that other grants could be tapped to fund her. Having failed to offer evidence to prove Yale's reason for her termination was pretextual, plaintiff's claims of an adverse employment action fail and the record is thus without a genuine issue as to her claims of discrimination and retaliation.

    C. HOSTILE WORK ENVIRONMENT: Nowhere in the complaint is such a claim found to have been articulated specifically. In less than a meticulous pleading, the language of counts one and two imprecisely refer to violations of CFEPA and Title VII. In her memorandum in opposition to defendants' motion, she refers to being subjected to "a great deal of harassment for many years" and the "circumstances under which [she] was forced to work." Pl. Memo p. 32. One would think that in 25 page complaint and a 64 page memorandum, counsel could have been more precise in specifying the causes of action intended. Notwithstanding the failure to adhere to the purpose of the pleading standard of Rule 8, F.R.Civ.P., and to resolve a potential claim of a hostile work environment being raised, such a claim will be discussed. Such a claim is found in the existence in the work place of such intolerable conduct or treatment of plaintiff sufficient to

11

alter the work environment to a degree that materially, adversely changes terms and conditions of employment or unreasonably dissuades an employee from complaining of such. Title VII does not establish a "general civility code for the American workplace." Burlington Northern and Sante Fe Ry. Co. v. White, 549 U.S. 53, 126 S.Ct. 2405, 2415 , 165 L.Ed.2d 345 (2006). Thus the Supreme Court has made clear that it is only those actions which would have been materially adverse to a reasonable employee that are Title VII actionable. See Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997). Thus no claim lies for insignificant or trivial harms. See Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998). It is not "the ordinary tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing" that can form the basis for a retaliation claim. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Also not covered are petty slights, minor annoyances often experienced by all employees, personality conflicts, general antipathy, snubbing by supervisors, or simple lack of good manners. See 2 EEOC 1998 Manual § 8, p. 8-13. Proper application of the prohibition is said to require an objective standard lest an employer be subject to the vagaries of employees' subjective standards which can lead to uncertainties and unfair discrepancies. The claim is measured not by the nature of the claimed discrimination but by the challenged act and its materiality to a reasonable person in plaintiff's position in order to weed out the trivial.

      When judged against the forgoing standard, plaintiff's claim comes up short. It is impossible to characterize plaintiff's complaints as other than trivial. These include her complaints of minor annoyances, personality conflicts, a lack of good manners, refusal to sign time sheets, yelling, belittling and criticism of her work, vague job threats, prohibition of notes, close performance scrutiny, requiring medical confirmation for medical leave, requiring her to

continue to work in the lab, criticism of her religion and exaltation of his religion by Dr. Rajendran, and restrictions on her job search, although the last is contradicted by plaintiff's testimony as to what Dr. Binder said. The imprecision or lack of dating the purported misconduct also leaves many of her claims subject to limitations of action, to be discussed below. However, on its face, the conduct complained of does not appear to meet the standard, a view consistent with the fact that the conduct was tolerated by plaintiff for a considerable time and only came to be the subject of the complaint sued on here in November, 2003. Accordingly, the claims of retaliation and hostile work environment do not present genuine issues of material fact and require summary judgment as a matter of law.

D. DISPARATE TREATMENT: The claim of discrimination on the basis that plaintiff was treated differently is also found not to present a genuine issue of material fact. Apart from the question, discussed above, of there being any evidence of an adverse employment action, this claim fails for a conceded lack of similarly situated employees treated differently from plaintiff. Pl's.L.R. 56 Statement, pp82. Not only does the record suggest that plaintiff was the only female research assistant but there is no basis to find that any employee in a protected class whose cloak plaintiff has invoked was treated differently from the abusive conduct allegedly directed to her. Indeed, she has claimed that Dr. Rajendran was comparably abusive to others as he was to her. Accordingly, summary judgment is defendants' entitlement on these grounds.

E. DISABILITY CLAIM: As noted, plaintiff had a medically verified heel bone spur which required rest from standing after an hour for 10 minutes. That was the only impairment she claimed (Defendant's Rule 56 Statement, ¶ 100, admitted by plaintiff), and it is a doubtful impairment as defined. See Colwell v.Suffolk County Police Dept., 158 F.3d 635, 644 (2d Cir.

1998), cert. den. 326 U.S. 1018 (1999); Banks v. Potter, 253 F. Supp 2d 335, 346-47 (D.Conn. 2003). Impairment limited to a single, particular job is not a substantial limitation in a major life activity. Rieger v. Orlor, Inc., 427 F.Supp 2d 105, 116 (D.Conn. 2006). As plaintiff has not argued that she was disabled as defined by statute, this claim would properly be deemed abandoned. Maurer v. Trans World Airlines, Inc., 316 F.Supp.2d 84, 88 (D.Conn. 2003).

It was not disputed that her experiment would be prolonged as a result of the breaks which she claimed she required. That was relevant to the reasonable accommodation required for one otherwise able to perform her work. Her claim that being allowed to sit on a high stool while working would be a reasonable accommodation is refuted by her admission that she could not sit to do most of her work. The job required more than an hour standing at a time, contrary to her limit, as a number of tests were involved and had to be performed the same day. (Defendant's Rule 56 Statement, ¶¶ 104, 105, 106, 116, 120 admitted by plaintiff.) One of plaintiff's doctors suggested she be assigned to other tasks, Id. at 111, which were unavailable. Id. at 113-14. All of which suggested an inability of plaintiff to perform the work assigned and foreclosed a reasonable accommodation to overcome her impairment. Defendant is entitled to summary judgment on this issue.

F: EMOTIONAL DISTRESS AGAINST DR. RAJENDRAN: This claim required 1) evidence of intentional infliction of distress, 2) by extreme and outrageous conduct, 3) causing distress 4) severe in degree. Petyan v. Ellis, 200 Conn. 243, 253 (2005): Chadha v. Charlotte Hungerford Hosp., 272 Conn. 776 (2005). The adequacy of alleged conduct as extreme and outrageous is for the court. Appleton v. Bd. of Educ., 254 Conn. 205, 210 (2000). Any conduct occurring beyond three years of the filing of the complaint is barred by the statute of limitations.

Conn. Gen. Stat § 52-577; DeCorso v. Watchtower Bible and Tract Soc. of New York, Inc., 78 Conn.App. 865, 873 (2003). That would remove the claims of derogation of plaintiff's religion and gender, by reference to her weight, according to her deposition and the facts admitted. ¶¶ 40-45, 49, 50 and abandoned as not argued. Mere insults, bad manners or hurt feelings are not "so outrageous.. and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable..." Appleton, 254 Conn at 211; Bond v. City of Middletown, 3889 F.Supp 2d 319, 342 (D.Conn. 2005); Kilduff v. Cosential, Inc., 289 F.Supp .2d 12, 21 (D.Conn. 2003). Further as described by plaintiff they cannot be deemed extreme or outrageous.

      G: LIMITATION OF ACTIONS: Plaintiff's claims are subject to the borrowed Conn. Gen.Stat. § 52-577 three year statute of limitations, except the negligent supervision claim, which is subject to § 52-584, a two year limitation. The comments of Dr. Rajendran about plaintiff's religion occurred in 1997 or 1998 and those in discussion to which plaintiff was not a part occurred between 2000 and 2003. Pl's Dep., p.71, 74. The comments about women's weight occurred in 1997-98. Id. at 111-12. The comments about men's superiority occurred before 2002. Id. p. 113. Claims based on gender and religion are therefore time-barred. Any claim of negligent supervision based on conduct prior to April 17, 2004 is also time-barred, the complaint having been filed April 17, 2006. Plaintiff has not identified any misconduct between April 17, 2004 and July 6, 2004 when she resigned her position at Yale.

      CONCLUSION: For the reasons set forth above, the motion for summary judgment is granted and all of plaintiff's claims are dismissed. The Clerk will close the file.

SO ORDERED

Dated at New Haven, Connecticut, February 7, 2008.

/s/
PETER C. DORSEY
UNITED STATES DISTRICT JUDGE